Thank you, Mr. Hammer. Ms. DeGore and Mr. Johnson-Karp, can you hear me? Yes, Your Honor. Good morning to each of you. The court calls case number 20-1383, William Jones v. Lanen and Wickman. We'll begin with oral argument from Ms. DeGore. Thank you, Your Honor. Good morning and may it please the court. Emily DeGore on behalf of Plaintiff Appellant William Jones. The defendants in this case confiscated Mr. Jones' legal materials and ordered them destroyed in order to prevent Mr. Jones from suing prison officials. This was not a case that was appropriate for summary judgment. There are three key facts that the defendants have no answer to other than to ask for inferences in their own favor. First, both Van Lanen and Wickman told Mr. Jones that the reason that they were confiscating his documents and designated them contraband was to prevent him from suing Van Lanen. Second, Van Lanen knew about Mr. Jones' complaints against him and also knew that Mr. Jackson was assisting Mr. Jones in preparing lawsuits. And third, Mr. Jones was unable to recreate crucial complaints and exhibits in support of his claims, including a sticky note showing that his placement in the restrictive housing unit was predetermined, paper communications between Mr. Jones and the prison chaplain regarding Mr. Jones' religious access and his access to a holy Koran, and three inmate declarations that Mr. Jones was unable to recreate. I'd like to start with standing because that was the issue on which the court appointed me to brief and argue this case. Mr. Jones has standing to sue defendants for their confiscation in order to destroy his legal materials. He has shown that he has an actual injury because defendants impeded his claim, which was not frivolous. A prisoner does not need to have filed a lawsuit on the underlying claim in order to have standing. Yet that was what the district court concluded here. Mr. Gorey, doesn't it have to be more than impeded the claim? Doesn't it have to be that it's now unavailable to him? And if so, how was he effectively precluded from obtaining relief here in terms of access to the courts? Your Honor, I believe that you're referring to the requirement that the Supreme Court outlined in Harbury and that this court has referred to in Hara v. Casey, that there needs to be some form of relief that is no longer available to Mr. Jones. And here he has shown that he is no longer able to challenge his detention in restrictive housing because of the defendants impeding his efforts to pursue his legal claims. What stopped him from filing that? This is, again, an access to the court. So I think we have to look at what is the injury that you're arguing. You're arguing denial of access to the courts. So what in the actions of the defendants stopped Mr. Jones from going to the court and asking for that relief? Well, two points on that, Your Honor. First, this court and the Supreme Court have both concluded that filing the underlying claim is not required in order to state a claim or show an actual injury for access to the court. Correct. And I'm not suggesting that it is. I agree with that statement. But to show an injury, you have to be able to show that it was that the documents that were confiscated made the remedy unavailable to him. And my focus is on the unavailable. So what made that unavailable to him, that being going to the courthouse and filing a lawsuit in connection with his housing or one of the other two lawsuits he wanted to file? This court has also recognized that the marginal weakening of a settlement or a remedy that you could have been awarded in an underlying claim also forms the basis for an actual injury. So Mr. Jones had the underlying value of his or the value of his underlying claims weakened by not being able to present all of the evidence that he would have had, had defendants not intentionally confiscated it and ordered it to be destroyed. So by not being able to present those crucial exhibits to a jury, that would have weakened the settlement value of his claim. The defendants in this case also interfered with Mr. Jones's access to inmate to inmate legal assistance by confiscating the materials that he had sent to Mr. Jackson in accordance with prison regulations in order to receive that assistance. Mr. Jackson was then unable to assist Mr. Jones with recreating the complaints and Mr. Jones was unable to do it himself because he had lost this source material. And I'd like to point out that the district court here did say that Mr. Jones had no actual injury because he hadn't filed a lawsuit. And as Your Honor recognized, this court has rejected that kind of reasoning in Harrer-Walters, as well as the Supreme Court rejecting it in Lewis and Harbury. So a filed complaint cannot be an example or cannot be a requirement. Additionally, this court has recognized in Devereux v. Gallegos that the destruction of documents is improper. So while this court has concluded that when a plaintiff does not allege that the documents themselves were destroyed, that might not be an issue for his claim. Here, Mr. Jones has alleged just that, and this court has recognized that it would be improper. A reasonable jury could all… Excuse me. Yes. Excuse me. I'm sorry for interrupting you. Can I ask you a question? One of the things that seems important to me, you can tell me I'm wrong, is distinguishing between that search of Rainer Jackson's cell, the confiscation of the materials in there, and the later destruction of the documents. It seems very difficult for me to think that Mr. Jones somehow has standing to challenge the circumstances around the search of Jackson's cell. Jackson doesn't even have a privacy interest we know in the contents of his cell, so it seems hard to me to think that one of his fellow inmates would hear the plaintiff, Jones. But more than that, the circumstances that led to the confiscation, the graham cracker boxes, etc., etc., that seems to have been more than enough to search that cell and get those documents out of there. So the point of all of this is to say my focus is much more on the ultimate destruction of the documents rather than the confiscation and any review of them. Is that focus mistaken in your view? Your Honor, I would hesitate to say that you're mistaken. I would say that this court could focus on either the search or a later destruction in order to conclude that Mr. Jones has alleged an actual injury. So the search itself, Mr. Jones presented evidence that it was challenged. How does he have standing to challenge the search of Jackson's cell? Because it was his legal documents that were taken. So he's not challenging it in the First Amendment sense, but to the extent that the, or excuse me, in the Fourth Amendment sense. But to the extent that the documents that were taken, Van Lannen had knowledge that Mr. Jackson was assisting Mr. Jones and other inmates with prisoner lawsuits. So therefore, the injury is to Mr. Jones when his documents were removed from Jackson's cell. But as Your Honor pointed out, the more troubling issue here is the destruction of the documents. And that occurred after there was a full-blown conduct hearing at which both Jackson and Mr. Jones testified telling Van Lannen and Wickman that these documents were legal materials and that Jackson had a right to possess them under the prison regulations. Yet, nonetheless, Van Lannen testified that he was not permitted to have them continued on in that testimony and Wickman ultimately issued the order to destroy. So a reasonable jury could find for Mr. Jones on the merits of his claim as well. The defendants have already conceded that he was working on non-frivolous lawsuits. He presented evidence of interference, as we've just discussed. And he also presented evidence that that interference actually injured him by weakening the value of his claims and precluding him from seeking relief on his detention in the restrictive housing unit, which he contended was unconstitutional. In addition, the defendants had the, they acted with more than negligence, which this court said in Snyder v. Nolan is the standard for assessing an access to courts claim. Both Van Lannen and Wickman knew that Mr. Jones was working on these lawsuits. As I mentioned in the conduct hearing, there could be no doubt that Van Lannen and Wickman both heard from Jones and Jackson that these papers were legal in nature. Yet the district court drew its own inferences about the documents based on Mr. Jones's filings and how he labeled them in this case and did not analyze Van Lannen's intent. I'd also like to make sure that we discuss the First Amendment retaliation claim, although I'm happy to continue to answer questions about the access to courts claim. The defendants conceded here that Mr. Jones was engaged in protected activity and that their conduct was likely to deter protected activity. So the only issue here is causation. This is a fact-bound determination that should have been left to the jury, yet the district court resolved it. Mr. Jones presented both direct and circumstantial evidence from which a reasonable jury could conclude that the defendant's retaliatory motive was a motivating factor in confiscating his documents and ordering them destroyed. This court has previously observed that direct evidence like this is rare, and here it should have prevented the court from granting summary judgment. Mr. Gorey, can you focus just for a moment? I want to get the benefit of your knowledge of the record on this. Focus for a second on the destruction, not the confiscation, and focus on Defendant Wickman, not Van Lannen. What's the source of the evidence in the record that Wickman said, I'm not going to let you sue a good man and tarnish his name and take his job? Where does that come from? That's at page SA6, Your Honor. That's from Mr. Jones's verified complaint, which is treated as an affidavit on summary judgment. Right, that's what I thought you were going to say. Okay, now here's the issue that I have. Jones testified in deposition, did he not? That's correct, Your Honor. Okay. And in the context of the deposition testimony, he was asked questions, I'm looking at the transcript, it's right in front of me, on pages 41, 42, 43, etc., about what both Van Lannen said and what Wickman said. And the deposition testimony, as I read it, is nowhere near as specific as the verified complaint. In fact, the statement that we were just talking about, I'm not going to let you ruin his career, that Wickman allegedly made, as stated in the verified complaint, is not in the deposition transcript. So the question I have for you is, what legal authority supports our treating the verified complaint as an affidavit for summary judgment purposes when we have evidence from the discovery record that undermines that which was alleged in the verified complaint? It undermines it because it's not entirely consistent with it. There's pretty substantial omissions from the deposition testimony. That's what concerns me, especially as to Wickman. Your Honor, two responses to that. First, I want to make sure that I'm clear that the affidavit, the complaint, was filed first and the deposition was later. So to the extent that you would be concerned about the sham affidavit rule. No, no, no. I'm not worried about that at all. But I just would have thought if Mr. Jones swore in his verified complaint that, look, this is what these fellows said to me. And if they said it, it's mighty troubling. He's right about that. I would have thought he remembered that in his deposition testimony and underscored it. And it's not there. Well, first, I'd like to point, Your Honor, to the Balsawitz case where this court said that when there are two different accounts by a witness of a conversation that took place on summary judgment, the if there is an issue about one of the accounts being slightly different but not inconsistent with the other. So not saying opposite things, then the inference needs to run in the non-movement's favor as to which of the statements would have been more troubling, as Your Honor put it. But that's different for a party to the case as opposed to a witness. Understood, Your Honor. However, I'd also like to point out that Mr. Jones was not represented by counsel in his deposition. The defendants here were represented by counsel. And to the extent that they wanted to ask about a particular statement that Mr. Jones had put in his complaint, they could have asked about it. But if the question is whether Mr. Jones can ultimately be believed, that's not a question that should be resolved on summary judgment, especially when he didn't say that something that was the opposite happened. As to Lieutenant Wickman, he said that he couldn't recall. And this court has also observed in other contexts that even honest witnesses will sometimes not be able to recall or have to later correct their testimony. Is there any other evidence besides that aspect of the verified complaint that would support a motivation factor for Lieutenant Wickman? As to Lieutenant Wickman, there is evidence that he was told in the conduct hearing that this was legal materials. And yet he later destroyed the entire stack. And even the district court observed that this was a hasty decision. I think that there's something more than negligence here when considering what Wickman did in light of what he knew at the time, which was that these are legal materials. I see that my time in the main has expired. So unless your honors have more questions now, I'll reserve the remainder for rebuttal. Thank you, Ms. DeGore. Mr. Johnson Carp will move to you. Thank you, your honors. And may it please the court. Assistant Attorney General Dave Johnson. As the court has been discussing in deciding this case, it's exceptionally important to keep in mind what we are talking about today. We are talking about the search of another inmate cell, the confiscation of materials from another inmate cell, a disciplinary process carried out as to another inmate, and the affirming of that disciplinary process as to the other inmate. Mr. Jones has claimed that all of this was done to retaliate against him for filing some inmate complaints and potentially filing a 1983 or two 1983 lawsuits. These claims are incredible at the outset, and there was no evidence to support the claims on summary judgment. Mr. Johnson Carp, on the retaliation claim against Officer Van Lanen, there's evidence in the record specifically from Mr. Jackson where he said that Officer Van Lanen said to him, why are you helping William Jones sue me? And you guys will never make use of these documents as exhibits to sue me now. They're contraband, and I'm making sure Lieutenant Wickman disposes of this contraband. I understand you dispute whether or not that was said, but we're at the summary judgment stage where we're not weighing evidence. Why wouldn't that statement raise an issue of fact on the causation question and the motivation of Officer Van Lanen? Just so I'm clear, Your Honor's referring to inmate Jackson's testimony, correct? Inmate Jackson's testimony about what Officer Van Lanen allegedly said to him. Right. And on that, I think even even accepting that testimony at face value. The bottom line here is that the defendants here have enunciated very clear, significant penological interests that support everything that happened in this case. And that defeats the but for causation. But how can that be if we take the evidence in the light most favorable to Mr. Jones as we have to? He claims that the documents that were destroyed were clearly labeled legal materials. So let's focus on just those documents. And the policy at the prison is not that legal materials are contraband. So maybe there were some documents that were legitimately destroyed as contraband. But if you believe the testimony of Mr. Jones and Mr. Jackson, these were legitimate materials they were allowed to have in the cell. So how would that be addressing a legitimate pediological interest? And I'm talking just about the destruction, not about the search. Well, I think we we we don't get to the destruction without the search. You know, these these documents don't come into possession without the the unquestioned valid search. So assume the search is valid. Assume that's fine. And they were were correct in their search of it. But the second that doesn't automatically give them the right to destroy just because they're searching. The destruction of the documents is a separate act that is alleged and argued as retaliatory. Well, so I think a couple of points in response, Your Honor. First is that there's just no evidence that these defendants were at all involved in the destruction. The testimony from Mr. Jones about how these documents or the fact that they were destroyed lacks any personal knowledge. He simply says they were destroyed. The only evidence in the record on the destruction comes from Wickman, comes from Jodine Perttu at DOC, explaining that after Wickman made his final determination in the disciplinary hearing, these documents then went to the warden. But he ordered them. Wickman ordered them destroyed. And you have the evidence from Mr. Jackson that Officer Van Lenen said he was going to tell Lieutenant Wickman to destroy them so he couldn't sue him. That sounds like direct evidence. Even after Wickman's statement, however, we have then unrebutted evidence of additional steps taken, notably by the warden, in reviewing these documents. It sounds like we're almost having what's equivalent to like a closing argument here for a jury about what inferences to draw from the facts. Your Honor, I think there's no inferences to be drawn with regard to what happened after the documents left Mr. or Captain Van Lenen's or rather Captain Wickman's possession. There's no inference. It's unrebutted evidence that the warden reviewed those documents. Jones hasn't presented any evidence about what happened to those documents. The only evidence on that point is that the warden reviewed them. And then the warden, the only evidence on that point is that the warden ordered them returned to Jones. And at that point, Jones says, no, they never returned them to me. So why isn't the inference, again, looking at everything in the light, most favorable to Mr. Jones as we have to? You have testimony that Lieutenant, that Officer Van Lenen said he was going to have Lieutenant Wickman destroy them so they couldn't be sued. You have evidence that Lieutenant Wickman ordered them destroyed. And then you have Jones saying, I never got them back. So why isn't a reasonable inference on this record at summary judgment that they were destroyed? Your Honor, I think that that evidence ignores, I think, dispositive intermediate evidence on which there's simply no dispute, which is that another DOC official who's not a defendant here, actually two DOC officials, were involved in the review. And that Mr. Jones simply has nothing to say about those documents. But you have, hold on though, hold on. You've got Mr. Jones saying, I'll just take the example of the notes he wrote, or he says he wrote to the chaplain. I wrote some notes to the chaplain requesting a copy of the Koran. I never got the Koran. And now I don't have the notes back, even though they say they've returned the notes that I wrote. OK, well, I don't have them back. And I'm swearing that I wrote them. So they've either got them somewhere in a room, and they should deliver them to me tomorrow morning, or they've destroyed them, one of the two. He's also got, does he not, beyond Mr. Jackson, he's got two fellow inmates, Arnell Gilmer and Michael Johnson, who swore under penalty of perjury as to what Van Lannen said to the plaintiff. And Van Lannen said to the plaintiff, according to the sworn statement of Mr. Johnson, anything, anything and everything is against the law to you guys around here. It's contraband. I went through it. I'll pull it all in a big folder, and I'll be speaking to Lieutenant Wickman, making sure that he knows it's contraband and not to return it. Your Honor, on that point about the conversation or the statements of Captain Van Lannen, I think it's important to emphasize that the same lack of deposition testimony that applied to Captain Wickman. There's also that problem in Jones's testimony about Captain Van Lannen. No, no, no. I'm talking about I'm not talking about Jones. I'm talking about Michael Johnson. I understand. But I think the fact here is that Jones's own statements undercut the credibility of his own witnesses here. You know, he he has submitted testimony under oath, basically corroborating the declarations of Captain Van Lannen and Captain Wickman, where in his deposition, he basically let go of the allegations in his complaint about what Van Lannen and what Wickman allegedly said. And his his statements about what they said were much less, as Your Honor suggested earlier, much less problematic. And so we're left with the plaintiff's testimony and the defendant's testimony effectively lining up on what was said here. And with that, there's just no conflict about this alleged underlying retaliatory motive. I think putting all of this aside, it's important to remember here that this entire process is informed by the legitimate penological interests that started the process and that carried through the disciplinary process. It wasn't the case that once Mr. Jones flagged the point that the materials were his legal materials, that these defendants had to just hand him all the documents that were confiscated from Mr. Jackson's cell. At that point, there was still a legitimate penological interest in continuing to retain those documents. And that that's what the unrebutted evidence about the warden's review shows is that after Captain Wickman made his final determination in the disciplinary hearing, these documents went to the warden and they went to the warden's staff to decide, OK, we've heard from Jones. Some of these sound like they're his legal materials. Let's sort those out because it's unquestioned that these materials also included other inmates' health service records, psychological service records. There's no penological interest in just handing those types of documents over to Mr. Jones. So what we see in the record… But what do you – I think your points at that level of generality are fine, but you have an adversary in litigation who's saying, I'm focused specifically on my notes to the chaplain and on – I don't remember who allegedly wrote the post-it note, but you will – about disciplinary – those are the pieces of paper that I'm focused on, and I don't have them right now. And just to be clear, we're talking about the retaliation or the denial of access here? No, retaliation. Retaliation. OK. And either – they were either destroyed according to Mr. Jones or they were not returned. One of the two. It's binary. Why? Because I don't have them today. I don't have my notes to the chaplain. I don't have the post-it note. Something happened to them. And even accepting that those documents never were returned, the worst that can be said is that there's negligence somewhere in the system, because there's just no evidence showing that either of the defendants in this case were even involved after the point of Wickman's final determination in the disciplinary process. So even accepting Jones's statement that I don't have them, he hasn't connected that to these defendants with any evidence of record. And instead, we have this unrebutted evidence about the documents being reviewed and sorted through by the warden, by Ms. Perttu, who are not defendants here. And that goes to the legitimacy of the penological process here. This is the disciplinary process legitimately playing out. And if it's the case that he, in fact, did not receive those documents, the worst that this record supports is negligence. And that, of course, is not actionable as a constitutional matter. Now, unless the court has any additional questions on retaliation, I'd like to just touch on the denial of access claims. And I think it's important to emphasize that he has made no showing of why he has filed this lawsuit instead of the underlying lawsuit in which he would have alleged and had the opportunity to prove the claims. That demonstrates that he has not shown an injury sufficient to support the denial of access to the courts. Unless the court has any additional questions on either the access or the retaliation claim, we would ask that summary judgment be affirmed. Thank you, Mr. Johnson-Karp. Mr. Gorey, I'm going to give you a minute for rebuttal. Thank you, Your Honor. The defendants here have now pointed to yet another penological interest in the mere proceeding of the process of confiscating and ordering destroyed Mr. Jones's documents. They have also pointed out that there were other prison officials involved in this decision-making. That does not mean that Van Lannen and Wickman did not have an intent to retaliate against Mr. Jones for his planned lawsuits against prison officials. And as this court has recognized, merely pointing to a generalized security interest, and this one is new from the interest that the defendants have asserted throughout this litigation, is not enough to defeat evidence of a retaliatory animus, or retaliating against a plaintiff for attempting to petition the courts. The warden's decision in this case shows that both defendants were wrong to confiscate and destroy the documents, and this court should reverse and remand for jury trial. Thank you. Thank you, Ms. DeGorey. Thank you, Mr. Johnson-Karp. Ms. DeGorey, you are appointed counsel by the court. You have our great thanks for your advocacy here. Thank you, Your Honor.